O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| YDM MANAGEMENT CO., INC., | ) | Case No. CV 15-00897 DDP (Ex) |
| Plaintiff, | ) | **ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | ) | |
| AETNA LIFE INSURANCE COMPANY, a Connecticut corporation, | ) | [Dkt. 33] |
| Defendants. | ) | |
| _____ | ) | |

Before the court is Defendant Aetna Life Insurance Company's ("Aetna") Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6). (Dkt. 33.) After considering the parties' submissions, the court adopts the following Order.

**I. BACKGROUND**

The factual background of this case has been set forth by the court in its prior Order granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (See Dkt. 22.) The Court will note additional allegations made in Plaintiff's Second Amended Complaint ("SAC") as relevant. In brief, this case arises out of an underpayment dispute between Plaintiff, an assignee of certain

physicians, and Defendant Aetna, an insurance company. The assignor physicians are "a certain medical group, known as Morris B. Silver, M.D. A Medical Corporation and [] a certain physician, Morris B. Silver, M.D.." (SAC ¶ 4.) According to the SAC, assignors were "'out-of-network providers' or 'non-participating providers' who had no preferred provider contracts or other written contracts with AETNA." (Id. ¶ 11.)

This case arises out of claims the assignors submitted to Aetna primarily between 2013 and 2014 for medical services provided to Aetna-insured individuals. (Id. ¶¶ 5, 10; SAC, Ex. B.) Before providing any treatment, the assignors contacted Aetna about each patient with an Aetna insurance card. (SAC ¶ 13.) The assignors "identified the type of treatment that would be provided to the particular Patient," "verified that each of the Patients were covered for such professional services and treatment," and sought "to obtain prior authorization, pre-certification and consent of AENTA to perform surgery, render treatment or perform procedures open each Patient." (Id.) According to the SAC, Aetna "agreed to pay, reimburse, compensate, remunerate, and indemnify the Physicians for the specified services, treatments and supplies to be provided and rendered to each of the Patients." (Id.) The assignors then provided the treatments "fully expecting that they would be paid for the usual, customary and reasonable value of their services." (Id.)

With regard to payment specifics, the SAC notes:

> At no time prior to the provision of services to each of the Patients by the Physicians, during conversations between the Physicians and AETNA, did AETNA advice the Physicians of the actual amount that would be paid or allowed for services to be rendered by the Physicians for each Patient, nor did the

2

      Physicians have any ability to determine the amount of money that would be paid or allowed be AETNA for the services to be rendered.

(Id. ¶ 21.) Rather than specify a reimbursement rate, "AETNA warranted, promised and represented that it would pay an unspecified amount to the Physicians for the services performed and to be rendered by the Physicians to each of the Patients, which amount would be determined by AETNA after the claims were submitted and adjudicated by AETNA." (Id.) Once the insurance claims were submitted, Plaintiff conceded that AETNA provided payment but alleged that the payment was below what Plaintiff believes to be the usual, customary and reasonable rate. (Id. ¶ 42.) Aetna also provided an "Explanation of Benefits Statement" with its payments. (Id. ¶ 42.)

      Plaintiff filed this action seeking to recover the difference between the payment AETNA provided and the usual, customary, and reasonable rate. Both the First Amended Complaint ("FAC") and the SAC allege seven causes of action: (1) recovery of payment for services rendered; (2) recovery of payment on open book account and / or accounted stated; (3) quantum meruit; (4) breach of implied-in-fact and/or implied-in-law contract; (5) declaratory relief; (6) breach of oral contract; and (7) promissory estoppel.

      Defendant's first Motion to Dismiss argued that Plaintiff's claims were overly vague and precluded by California law. Specifically, Defendant relied on a California regulation that states an insurer is required to pay "[f]or nonemergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage." Cal. Code Regs. Tit. 28, § 1300.71(a)(3)(C).

3

1    In its prior Order, the court dismissed the FAC for failing to
2 identify the specific claims or contracts at issue in this case.
3 (Dkt. 27 at 8.) The Order also dismissed with prejudice all of
4 Plaintiff's claims to the extent they relied on section 1300.71 for
5 recovery because the provision only entitles Plaintiff to
6 reimbursement at the rates set forth in the Evidence of Coverage.
7 (Id. at 12.) The court did, however, leave open the possibility
8 that Plaintiff could recover if Plaintiff alleged "a promise, oral
9 contract, or implied contract by Aetna to pay something other than
10 what is required under law." (Id.)
11   In the SAC, Plaintiff addresses the vagueness issue by
12 providing a spreadsheet detailing all claims at issue. The
13 spreadsheet also identifies the billed amount, the amount paid, and
14 the amount Plaintiff believes it is owed. (SAC, Ex. B.) The SAC
15 further clarifies that it does not seek to recover under section
16 1300.71 and alleges that it does "posses or have access to any of
17 the Evidence of Coverage documents." (Id. ¶ 23.) Rather, Plaintiff
18 believes that it is entitled to "be paid by AETNA in an amount
19 which was commensurate with the usual, customary and reasonable
20 value (or the quantum meruit) of the services and treatments to be
21 rendered (offset only by deductible and coinsurance amounts) in
22 conformance with California Civil Code Section 1611 . . . ." (Id. ¶
23 25.) California Civil Code Section 1611 provides:
24 > When a contract does not determine the amount of the consideration, nor the method by which it is to be
25 > ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be
26 > so much money as the object of the contract is reasonably worth.
27 (Id.) Essentially, Plaintiff alleges that the telephone
28 conversations its assignors had with Aetna verifying coverage,

4

identifying treatments, and receiving authorization to provide care constituted a contract with Aetna governed by section 1611's consideration requirement. Plaintiff's SAC does not, however, contain any new allegations concerning the specific details of the assignors' conversations with Aetna.

**II. LEGAL STANDARD**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiff must allege "plausible grounds to infer" that their claims rise "above

5

the speculative level." <u>Twombly</u>, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at 679.

**III. DISCUSSION**

Defendant filed this Motion to Dismiss against each of the causes of action raised in Plaintiff's SAC. Generally, Defendant argues that Plaintiff's claims are precluded by the reimbursement requirements set forth in section 13700.1. (Motion to Dismiss Second Amended Complaint 7.) Defendant further argues that specific allegations in the SAC are contradictory and the SAC remains too vague and conclusory to cure the defects identified in this court's prior Order. (<u>See</u> Mot. 8-12.)

Plaintiff responds that the SAC should survive because it adequately alleges that "AETNA owes the Physicians usual, customary and reasonable payments solely because of and in accordance with California Civil Code Section 1611, which codifies the rule of quantum meruit." (Opposition to Motion to Dismiss Second Amended Complaint 5.) These claims "are based upon oral representations, interactions, communications and promises made by AETNA's representatives to YDM assignors." (<u>Id.</u> 3.) Further "[t]hese representations made during conversations between the Physicians AETNA gave rise to actual, implied or quasi-contracts between YDM and AETNA, which arose during the authorization and verification process prior to the provision of services to each patient." (<u>Id.</u>)

As an initial matter, Defendant correctly notes that the SAC remains vague regarding the specific amount Plaintiff believes it is owed in this case. Plaintiff provides some notice of the claims

6

at issue by attaching a spreadsheet to the SAC that includes claim numbers, the amount assignors billed, and the amount they were ultimately paid. (SAC, Ex. B.) The spreadsheet also calculates an "owed" amount based on the difference between the amount billed and the amount paid by Aetna. However, the owed column is not a precise calculation of the amount at issue in this case. As Plaintiff's SAC acknowledges, the assignors were not entitled to the entirety of the billed amount but rather "a portion or percentage of their total billed charges, equivalent to the usual customary and reasonable amount . . . ." (SAC ¶ 16.) Plaintiff does not identify what the usual, customary, and reasonable amount is for any particular service nor does it allege that the amount they billed was the usual, customary, and reasonable amount. Thus, it remains difficult to discern the specific amount Plaintiff believes it was underpaid.

### A. Claims Arising Out of Defendant's Oral Representations

Under California law, Defendant is required to pay non-contracted providers such as Plaintiff only "the amount set forth in the enrollee's Evidence of Coverage" for non-emergency services. Cal. Code Regs. tit. 28, section 1300.71(a)(3)(C). Plaintiff believes, however, that it is entitled to be paid the usual, customary, and reasonable amount for these services. In order to state a claim for additional payment, Plaintiff must plead sufficient facts to plausibly infer that there was an arrangement between Plaintiff and Defendant to pay more than the statutorily required amount. Thus, the bulk of Plaintiff's claims revolve around telephone conversations assignors had with Aetna representatives prior to the provision of medical services, which

7

Plaintiff asserts form the basis of its entitlement to additional payment. Specifically, Plaintiff's third cause of action for quantum meruit compensation pursuant to California Civil Code section 1611, fourth cause of action for breach of implied-in-fact or implied-in-law contract, sixth cause of action for breach of oral contract, and seventh cause of action for promissory estoppel all turn on the allegations concerning these telephone conversations.

In order to survive a motion to dismiss on any of these claims, Plaintiff must allege the existence of some sort of contract or promise that enables Plaintiff to recover the customary, usual, and reasonable amount for services. With regards to the fourth, sixth, and seventh causes of action (breach of implied contract, breach of oral contract, and promissory estoppel), Plaintiff must allege that there was a contract or promise between assignors and Aetna to pay the customary, usual, and reasonable amount for medical services. See Unichappell Music, Inc. v. Modrock Production, Inc., No. CV 14-2382 DDP, 2015 WL 546059 at *2 (C.D. Cal. Feb. 10, 2015) (holding a complaint must include the essential terms or legal effect of the contract sufficient to provide the defendant with notice of the contract allegedly breached); Advanced Choices, Inc. v. Dep't of Health Servs., 182 Cal. App. 4th 1661, 1672 (2010) (requiring "a promise clear and unambiguous in its terms" to state a claim for promissory estoppel). Here, however, Plaintiff expressly concedes the existence of any such contract or promise when they admit that Aetna never stated "the actual amount that would be paid or allowed for services" and that all "amount[s] would be determined by AETNA

8

after the claims were submitted and adjudicated by Aetna." (SAC ¶ 21.) Even from the face of the complaint, it appears there was no agreement by Aetna to provide more than the statutorily required amount. Thus, the court DISMISSES with prejudice Plaintiff's fourth, sixth, and seventh causes of action.

With regard to Plaintiff's third cause of action for reasonable compensation under section 1611, Plaintiff does not need to allege the existence of a specific reimbursement rate but must still allege a contract of some sort. See Cook v. Thomson, 230 Cal. App. 2d 866, 868 (Ct. App. 1964) (concluding that section 1611 of the Civil Code became relevant because the court found the existence of an oral contract between the parties). The court has already dismissed this case for failure to plead sufficient facts to allege the existence of an oral contract and the SAC offers no new allegations. Reexamining the allegations in the SAC, the court does not revise its prior conclusion.

As noted above, Plaintiff concedes that Aetna never agreed to a specific reimbursement rate or to pay anything other than what was required by statute. Plaintiff alleges the assignors "were led to believe that they would be paid a portion or percentage of their total billed charges, equivalent to the usual customary and reasonable amount charged" but never offers any specifics about what Aetna representative said to suggest such a conclusion. (SAC ¶16.) Likewise, the SAC alleges that "AETNA promised through its words and/or implied through its actions and words, that it would pay benefits to the Physicians" but never asserts that Aetna acknowledged the benefits would be greater than what was set forth in the Evidence of Coverage. (SAC ¶ 19.) Indeed, Plaintiff

9

acknowledges that "AETNA guaranteed that it would first pay its portion of the charges for the services to be rendered to the Physicians, before the Patients had an obligation to pay the balance of the bill." (SAC ¶ 18.) The SAC offers no allegation explaining why Plaintiff believes that this guaranteed amount should be understood as the usual, customary, and reasonable rate rather than the amount set forth in the Evidence of Coverage and required to be paid by law.

Ultimately, Plaintiff has adequately pled, and Defendant does not contest, that there was an arrangement between assignors and Defendant that if assignors provided certain medical services, they would be paid a certain amount. However, Plaintiff has not stated a claim that this arrangement was anything other than the typical relationship between insurer and non-contracted provider governed by section 1300.71 or that there was a contract to pay something other than the statutorily required amount. Having already permitted Plaintiff to plead any additional information it had regarding assignors' telephone conversations with Aetna, the court finds that further amendment would be futile and dismissed Plaintiff's third cause of action with prejudice.

**B. Remaining Claims**

Plaintiff's first cause of action is for payment for services rendered. While not described as such in the SAC, both parties refer to this as the common count claim. In California, a common count for services rendered requires a plaintiff to show (1) that the defendant requested that the plaintiff perform services for the defendant's benefit; (2) that plaintiff performed the services as requested; (3) that defendant has not paid for the services; and

10

(4) the reasonable value of the services provided. Judicial Council of California Civil Jury Instruction 371.

Defendant argues that the common count claim fails because Plaintiff does not identify the specific sum defendant owes or plausibly assert that Defendant requested the services or that the services were performed for Defendant's benefit. (Mot. 12.) Rather, Defendant argues that SAC demonstrates patients requested the services and patients benefits from assignors' actions. Plaintiff only contests Defendant's contention that it did not benefit by arguing that the provision of services allows Defendant to maintain its business model and collect insurance premiums. Setting aside whether Defendant benefitted from assignors' actions, it is undisputed that the SAC does not identify the reasonable value of the services provided or what portion of that Defendant owes rather than patients. Further, "[I]t is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." Hedging Concepts, Inc. v. First Alliance Mortgage Co.. 41 Cal. App. 4th 1410, 1419 (1996). Given this court's prior determination that section 1300.71 supplies the default terms of payment for any services provided by assignors, the Court concludes that Plaintiff has failed to state a claim for common count. Thus, the court DISMISSES with prejudice Plaintiff's first cause of action.

Plaintiff's second cause of action is for recovery of payment on an open book account. "A book account is a detailed statement of debit/credit transactions kept by a creditor in the regular course of business, and in a reasonably permanent manner." Reigelsperger

1  v. Siller. 40 Cal.4th 574, 579 n.5 (2007). "A book account is
2  created by the agreement or conduct of the parties in a commercial
3  transaction. Nonetheless, the mere recording . . . or the
4  incidental keeping of accounts under an express contract does not
5  of itself create a book account." H. Russell Taylor's Fire
6  Prevention Serv., Inc. v. Cocal Cola Bottling Corp., 99 Cal. App.
7  3d 711, 728 (1979).

8      Defendant argues that the book account claim must be dismissed
9  because there was no agreement between the parties generally and
10 that Aetna did not assent to owing the full amount billed by
11 assignors. Plaintiff alleges that a book account was established
12 because it maintained a record of claims it submitted to Defendant.
13 Plaintiff further argues that Defendant acknowledged its obligation
14 to pay the debt on the book account by accepting the claim
15 submission, paying a portion of the bill, and issuing an
16 Explanation of Benefits Statement. (SAC ¶ 71.) Plaintiff does not,
17 however, allege that Defendant agreed to pay the full amount
18 billed. Further, the records Plaintiff submits do not list the
19 specific amounts Plaintiff believes it is owed. Thus, Plaintiff's
20 assertions are insufficient to sustain a cause of action for an
21 open book account. Plaintiff's second cause of action is DISMISSED,
22 with prejudice.

23     Having concluded that Plaintiff fails to a state claim for
24 recovering any additional payment from Aetna on its other causes of
25 action, the court also DISMISSES with prejudice Plaintiff's fifth
26 cause of action for declaratory relief.

**IV. CONCLUSION**

For the reasons set forth above, the court GRANTS Defendant's Motion to Dismiss. The SAC is DISMISSED, with prejudice.

IT IS SO ORDERED.

Dated: July 13, 2016

DEAN D. PREGERSON
United States District Judge